FLORENCE T. NAKAKUNI    #2286
United States Attorney
District of Hawaii

MARK A. INCIONG CA BAR #163443
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii   96850
Telephone:  (808) 440-9228
Facsimile:  (808) 541-2958
E-mail:     Mark.Inciong@usdoj.gov

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 06 2015

at 11 o'clock and 10 min. A M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | MAG. NO. 15-931 KSC |
| | ) | |
| Plaintiff, | ) | CRIMINAL COMPLAINT |
| | ) | |
| vs. | ) | |
| | ) | |
| BRYANT IWAI, | ) | |
| | ) | |
| Defendant. | ) | |

CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

On or about August 5, 2015, in the District of Hawaii, Bryant IWAI did knowingly and intentionally possess, with intent to distribute, five-hundred (500) grams or more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

I further state that I am a Task Force Officer of the Drug Enforcement Administration and that this Complaint is based upon the facts set forth in the attached "Affidavit in Support of Criminal Complaint", which is incorporated herein by reference.

DATED:  HONOLULU, HAWAII: August 6, 2015.

Kyle Echiberi
Task Force Officer, DEA

Sworn to and subscribed in my presence, this 6th day of August, 2015:

KEVIN S.C. CHANG
UNITED STATES MAGISTRATE JUDGE

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

Kyle Echiberi, after being duly sworn, deposes and says as follows:

1. I am a Honolulu Police Department (HPD) Officer and I am currently assigned to the Hawaii Airport Drug Task Force (HATF), at the Honolulu International Airport, HI. In this capacity, I am also federally cross-designated as a DEA task force officer. I have been involved in numerous drug investigations, several of which were airport-related drug investigations involving the smuggling of drugs through airports and commercial mail/parcel carriers. As a result of my experience and training, I am familiar with the common practices utilized by drug traffickers to smuggle drugs and money through airports and commercial mail/parcel carriers.

2. During this time, I have become knowledgeable with the enforcement of State and Federal laws pertaining to narcotics and dangerous drugs. Based on this experience, I have become well versed in the methodology utilized in narcotics trafficking operations, the specific types of language used by narcotic traffickers, the unique trafficking patterns employed by narcotics organizations and their patterns of drug abuse.

3. On or about August 4, 2015, United States Postal Inspector intercepted a parcel while at the Honolulu Domicile. The parcel is more specifically described as:

One (1) priority mail medium flat rate parcel, measuring approximately 14" x 14" x 14", weighing approximately 9.5 pounds, addressed to: "98-288 Kaononi Street Aiea, HI 96701 Apt 2303" with return address of: "5201 Dean Martin Drive Las Vegas, NV 89118", bearing U.S. postage $84.85, and USPS tracking number EK877653685US. (Hereinafter Subject parcel)

4.      On or about August 4, 2015 a Federal search warrant (MAG #15-908 KSC) was issued by the Honorable U.S. Magistrate Judge Kevin S.C. Chang to search the parcel. During the warranted search, approximately 2,760 grams of methamphetamine (confirmed by field-test) was found in the subject parcel. The non-drug contents of the Subject Parcel included bubble wrap, food saver bags, a "Golden Nugget" sweater, and white striped pillow case.

5. On or about August 5, 2015, the Honorable U.S. Magistrate Judge Kevin S.C. Chang signed a Warrant Authorizing the Use of Beeper Device and Tracking Device(MAG #15-0910 KSC) for a controlled delivery of the parcel (hereafter "Subject Parcel") described in paragraph 3. Investigators removed the methamphetamine from the Subject Parcel and installed pseudo-methamphetamine and a monitoring device that would emit a signal indicating to investigators that the Subject Parcel was opened. The interior contents of the subject parcel were also dusted with fluorescent powder, which becomes visible when exposed to ultraviolet (UV) light. Additionally, the same exterior container and other interior contents described above will also be placed back in the re-wrapped parcel. Investigators left an approximately one gram sample of methamphetamine within the Subject Parcel.

6. On or about August 5, 2015, agents and officers assigned

to the DEA Hawaii Airport Task Force (HATF), DEA Group 3 and HPD Narcotics-Vice Canine Unit, in conjunction with the U.S. Postal Inspection Service (USPIS) established surveillance in the vicinity of 98-288 Kaonohi Street Aiea #2303, HI 96701, hereafter "Subject Residence" in preparation for the controlled delivery of the Subject Parcel. At approximately 11:48 a.m., a United States Postal Inspector posing as a USPS mail carrier approached the Subject Residence entrance area and approached the call box to call to unit #2303 for the subject parcel.

7. The USPS mail carrier called unit #2303 on the call box located outside the main entrance and identified himself as the postal carrier and relayed that he had a parcel to deliver to Unit #2303. The male, later identified as Bryant IWAI, stated, "I'm on the road right now. Can you leave the box at the front desk with the manager?" At about 11:58 a.m., the postal carrier gave the Subject Parcel to the manager at the front desk of the Subject Residence.

8. At approximately 12:57 p.m., IWAI was observed by surveillance units walking up to the front counter of the Subject Residence, greeting the manager and initiating a short conversation. The manager handed IWAI the Subject Parcel. IWAI then continued to the elevator to unit #2303.

9. Surveillance was maintained on unit "2303" via video surveillance as IWAI approached his apartment.

10. At approximately 3:15 p.m., the beeper signaled that the

subject parcel had been opened. Shortly thereafter law enforcement officers and agents knocked on the front door and announced, "Police" several times. After several minutes of waiting, no one answered the door. Entry was then made into the residence to secure the premises in anticipation of a search warrant.

11. When officers and agents entered the residence, IWAI was observed walking towards officers in the living room and was detained.

12. While securing the residence, a Smith & Wesson .38 caliber revolver was observed in plain view in the living room. At approximately 3:25 p.m., IWAI signed a consent to search form for his apartment. A total of approximately 14 pounds of crystal methamphetamine (which field-tested positively as methamphetamine) was found in several locations in the living room area. Large amounts of currency were found in the kitchen cabinet and living room where a digital scale, drug ledger and plastic baggies were also found.

13. At approximately 3:20 p.m., IWAI was placed under arrest and later transported to the Hawaii Airport Task Force Office interview room for questioning.

14. In a post-Miranda statement, IWAI stated:

   (a) That he knew that subject parcel contained pipes and "stuff" (which IWAI acknowledged meant crystal methamphetamine). This is the third parcel he received from Las Vegas, NV;

   (b) This methamphetamine was sent to him by a person in Las

Vegas whom he meets in Vegas to facilitate the drug buys and communicates through text or phone calls;

    (c) He paid $55,000 with a $5,000 tip for 15 pounds of methamphetamine he ordered in Vegas last week. He mailed 9 pounds of crystal methamphetamine last week to his address while in Las Vegas and was waiting on the other 6 pounds which he was supposed to receive today (August 5, 2015);

    (d) He intended to sell this methamphetamine. He related that this is his job since he's unemployed and he would sell all the methamphetamine in small amounts to make a huge profit.

    15. Based upon my experience and training, the possession of this quantity of methamphetamine and the manner in which it was packaged is not consistent with personal use but rather is consistent with distribution.

    17. Methamphetamine is a Schedule II controlled substance.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Kyle Echiberi
Task Force Officer, DEA

This Criminal Complaint and Affidavit in support thereof were presented to, approved by, and probable cause to believe that the defendant above-named committed the charged crime found to exist by the undersigned Judicial Officer at __11:15__ am/pm on August __6__, 2015.

Subscribed and Sworn to Before Me, this ____ Day of August, 2015

_____
KEVIN S.C. CHANG
United States Magistrate Judge