IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BRYANT IWAI,<br><br>Defendant. | Case No. 15-cr-00723-DKW<br><br>**ORDER DENYING DEFENDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE** |

Less than four months after this Court denied his first compassionate release motion, *see* Dkt. No. 200, Defendant Bryant Iwai has brought a second, nearly identical one. Iwai argues—again—that his health conditions—obesity, hypertension, and type 2 diabetes—coupled with the COVID-19 pandemic, present extraordinary and compelling circumstances warranting a sentence reduction. The Court again disagrees. For the reasons set forth below, Iwai's motion is DENIED.

## RELEVANT BACKGROUND

On January 10, 2018, the Court sentenced Iwai to a total of 196 months' imprisonment for methamphetamine distribution and possession of a firearm in furtherance of a drug trafficking crime, followed by 5 years of supervised release. Dkt. No. 159. While Iwai's sentence included a downward departure for substantial assistance to the Government, Dkt. No. 60 at 2, the Court expressed at sentencing that significant aggravating factors were also present, including, but not

limited to, the large quantity of methamphetamine in which Iwai transacted, the presence of a loaded and operable firearm in Iwai's residence that was seized adjacent to those drugs, and Iwai's long history of personal drug use. Dkt. No. 166 at 19:13–23:6.

On May 5, 2020, Iwai, through counsel, filed his first motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("first compassionate release motion"). Dkt. 195. Iwai argued in that motion that his medical conditions—obesity, hypertension, and type 2 diabetes—in light of the COVID-19 pandemic presented extraordinary and compelling reasons warranting release. *Id.* After full briefing, the Court denied that motion on June 15, 2020. Dkt. No. 200.

On October 6, 2020, Iwai, through counsel, filed his second motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("second compassionate release motion"),[1] making substantially the same arguments he did in his first compassionate release motion but adding that COVID-19 infections at his facility appear to be increasing. Dkt. No. 208. On October 21, 2020, the Government filed a response opposing any sentence reduction, Dkt. No. 210, to which Defendant replied on October 27, 2020, Dkt. No. 214. This order follows.

---

[1] Iwai has asked the Court to "reduce his sentence to time served, or alternatively, allow him to serve his sentence under home detention." Dkt. No. 214 at 6; *see also* Dkt. No. 208 at 1–2. While this Court has discretion to reduce an inmate's sentence (to time served or otherwise) pursuant to 18 U.S.C. § 3582, it does not have the discretion to determine inmate placement while he serves his sentence. Inmate housing determinations are made by the Bureau of Prisons ("BOP"). The Court could, however, impose a home confinement condition as a part of Iwai's supervised release.

## **LEGAL STANDARD**

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alterations in original) (quoting 18 U.S.C. § 3582(b)). Such circumstances must be "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Dillon*, 560 U.S. at 827, 831; *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003).

Congress carved out one such circumstance in 18 U.S.C. § 3582(c)(1)(A)(i). A court may "modify a term of imprisonment" upon an inmate's motion if:

1. the inmate exhausted "all administrative rights to appeal a failure of the [BOP] to bring a motion" on his behalf or 30 days has lapsed since the relevant warden received a request to do so;

2. the inmate has established that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable [Sentencing Commission] policy statements";

3. the court considers the sentencing factors set forth in 18 U.S.C. § 3553(a) and finds the inmate is "not a danger to the safety of any other person or the community," as provided under 18 U.S.C. § 3142(g).

*See* 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13 (policy statement). The inmate bears the burden of establishing by a preponderance the requirements for a sentence reduction. *See, e.g.*, *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998); *see also Walton v. Arizona*, 497 U.S. 639, 650 (1990) (a

defendant's due process rights "are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency"), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 609 (2002).

## DISCUSSION

As explained below, Defendant has failed to evidence exhaustion. Even if he had, he fails to demonstrate an extraordinary and compelling reason justifying a sentence reduction, and the Court finds that, in any event, the sentencing factors at 18 U.S.C. 3553(a) weigh against such a reduction.

### I. Exhaustion

As this Court and many others have explained, exhaustion under Section 3582(c) is mandatory. *See, e.g.*, *United States v. Kazanowski*, No. 15-CR-00459-DKW-5, 2020 WL 3578310, at *3–5 (D. Haw. July 1, 2020); *United States v. Van Sickle*, 2020 WL 3962225, *3 (W.D. Wash. July 13, 2020) (denying inmate's second compassionate release motion because inmate failed to exhaust). After an inmate submits a request for compassionate release to the warden of the institution in which he is housed, he may satisfy Section 3582's exhaustion requirement in two ways.

> *First*, if at least 30 days have "lapse[d]" since the inmate submitted his request to the warden and the BOP has failed to respond, then the inmate may file a motion in federal court and the court "may reduce the term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). This allows the warden a reasonable time to respond to the inmate's request, but it also prevents the warden from denying the inmate relief by simply

> refusing to respond. *Second*, if the warden denies the request within the 30-day period, the inmate must "fully exhaust[ ] all administrative rights to appeal." 18 U.S.C. § 3582(c)(1)(A); *see, e.g.*, *United States v. Miller*, No. 2:16-CR-00269-BLW, 2020 WL 113349, at *2 (D. Idaho Jan. 8, 2020) (noting that Congress did not intend to allow a defendant to "short-circuit the [BOP]'s administrative procedures" by simply "waiting 30 days after filing his request, despite the warden timely acting on that request"). To that end, the inmate must "appeal the denial through the Administrative Remedy Procedure (28 CFR part 542, subpart B)." 28 C.F.R. § 571.63(a).

*Kazanowski*, 2020 WL 3578310, at *4. Requiring exhaustion serves the dual purpose of providing the agency an opportunity to act first in an area in which it has expertise and of promoting judicial efficiency because the agency's decision-making process will either moot the issue or provide a useful record for the Court. *Id.* at *4 n.8 (citation omitted).

Iwai makes no attempt to demonstrate exhaustion prior to bringing *this motion*. On April 29, 2020, prior to bringing his first compassionate release motion, Iwai petitioned the warden at his facility and had that petition denied two weeks later. Dkt. No. 195 at 6; Dkt. No. 208-2. On June 15, 2020, the Court then considered and denied Iwai's first compassionate release motion on the merits. Dkt. No. 200. Iwai now points to the same April 2020 administrative petition as satisfying the exhaustion requirement here. Dkt. No. 208-1 at 5. But that will not do. Exhausting administrative remedies on one occasion does not forever obviate the need to do so. Iwai's logic undermines a fundamental purpose of the exhaustion requirement: to

5

first give the agency an opportunity to act in an area in which it has expertise prior to judicial involvement.

Iwai brings his second compassionate release motion, at least in part, because conditions have changed at his facility—that is, there are more inmates and staff now testing positive for COVID-19 than was the case in April 2020.  Dkt. No. 208-1 at 10–11.  In fact, if conditions had not changed, there would be no point to seeking compassionate release a second time.  But precisely because conditions have changed, the BOP should first be provided an opportunity to evaluate Iwai's medical conditions in light of these developments *before* the Court does so.  That is what Section 3582(c) requires.[2]

The Court holds that for each compassionate release motion an inmate brings, he must first petition the warden of his facility and then meet one of the two exhaustion methods detailed in Section 3582(c)(1)(A).  As Iwai has not done so, his motion is denied on that ground alone.

---

[2]Iwai alternatively argues that he need not petition the Warden because the BOP has mischaracterized him as a violent offender, making any request futile. Dkt. No. 214 at 6.  There is, however, no futility exception to the exhaustion requirement, *see* 18 U.S.C. § 3582(c)(1)(A), and even if there was, there is no showing that such offenders are *per se* ineligible for compassionate release.

## II.     Extraordinary and Compelling Reasons

Even if Iwai had met the exhaustion requirement, he has not demonstrated extraordinary and compelling reasons warranting a sentence reduction. The Court applies the following framework to determine whether COVID-19 presents extraordinary and compelling reasons to grant such a reduction:

> [A]n inmate must necessarily establish the following three elements by a preponderance of the evidence: (1) the inmate is "suffering from a terminal illness," or a "serious" physical or cognitive condition; (2) that condition puts the inmate at a high risk of becoming seriously ill from COVID-19; and (3) if the inmate were to contract COVID-19, the inmate's ability "to provide self-care within the . . . correctional facility" would be "substantially diminishe[d]" and the inmate would "not [be] expected to recover."

*Kazanowski*, 2020 WL 3578310, at *7 (alterations in original) (quoting U.S.S.G. §1B1.13 & cmt. n.1(A)). Defendant fails on the last two elements.

The Court recognizes Iwai's medical records show he currently suffers from obesity, hypertension, and type 2 diabetes. Dkt. No. 195 at 2; *see also* Dkt. No. 210-1 at 45 (at a June 30, 2020 examination, a BOP doctor recorded Defendant's body mass index ("BMI") as 30.1). Thus, as was the case with his first compassionate release motion, *see* Dkt. 195 at 16–19, Iwai has medical conditions recognized by the CDC as placing him at greater risk of a severe reaction to COVID-19.[3]

---

[3] *See Coronavirus Disease 2019 (COVID-19): People at Increased Risk for Severe Illness – People with Certain Medical Conditions*, CDC (updated Oct. 16, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 2, 2020) (listing obesity, with a BMI of 30 or higher, and type

But as the Court has often explained, demonstrating a high risk of becoming seriously ill from COVID-19 requires showing not only that an inmate is a member of an at-risk group, but also that there is "a high risk of contracting the virus because of the number of positive COVID-19 cases at the facility where [the inmate] is housed." *See, e.g.*, *United States v. Rodrigues*, No. 16-CR-00529-DKW, 2020 WL 5351029, *5 (D. Haw. Sept. 4, 2020). The Court acknowledges there has been an increase in COVID-19 cases at FMC Rochester, where Iwai is currently housed, as compared to when Iwai filed his first compassionate release motion. *See* Dkt. No. 200 at 4 (acknowledging "just one positive test" having ever been reported at the facility as of the date of the order). From the record presented, the highest reported active case count at FMC Rochester is from October 21, 2020, when 44 people (38 inmates, 6 staff) were reportedly infected. Dkt. No. 210 at 14; *see also* Dkt. No. 208-1 (reporting 35 active cases as of October 5, 2020).

But even since October 21, 2020, the prevalence of the virus at FMC Rochester appears to be subsiding. Iwai himself admits, "current active cases in total is . . . getting smaller each week because most are recovering from the virus." Dkt. No. 214-4. As of November 3, 2020, BOP reports just 22 active cases (13

---

2 diabetes as placing someone at an increased risk of severe illness if they contract COVID-19; listing hypertension as possibly creating an increased risk).

inmates, 9 staff) at the facility.[4]  And even if the Court accepts Iwai's unverified account that his housing unit was particularly hard hit, *see* Dkt. No. 214-3, Defendant admits "the major majority [sic] of those infected have already recovered" and those who have not are "in the COVID section downstairs," away from Iwai.  Dkt. No. 214-4.  Of course, this does not mean these conditions present no risk.  Indeed, the risk at FMC Rochester and other BOP facilities may be more than nominal.  But Iwai is tasked with presenting "extraordinary and compelling" circumstances, far from those that presently exist.  *Cf. United States v. Cornelio*, No. 17-CR-00321-DKW, 2020 WL 6021466 *3 (D. Haw. Oct. 12, 2020) (finding the defendant demonstrated a high risk of contracting the virus where 398 inmates and 6 staff were then testing positive for the virus).

Further, even if one assumed the current case count and conditions represented a significant risk of Iwai contracting the virus at FMC Rochester, he has failed to demonstrate that if he were to contract COVID-19, his ability "to provide self-care within the . . . correctional facility" would be "substantially diminishe[d]" and he would "not [be] expected to recover." *See* U.S.S.G. § 1B1.13 n.1(A).  Again, Iwai belies his own argument.  Though he claims it is difficult for him to get medical attention, *see* Dkt. No. 214-5, he states he sees a nurse twice a

---

[4] *COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Nov. 2, 2020).

9

day and has not had an issue getting insulin to treat his diabetes, *see id.*; Dkt. No. 214-3. Further, FMC Rochester is a medical facility[5] and, as the Government points out, Dkt. No. 210 at 14, there have been no COVID-19-related deaths reported there, despite roughly 100 total inmate infections.[6] While these facts are not conclusive, they suggest Defendant is in a place capable of providing him with the care he needs should he contract the virus.[7] Certainly, Defendant has not presented convincing evidence to the contrary.

Because Defendant has again not carried his burden of showing that there are "extraordinary and compelling reasons" justifying his early release under 18 U.S.C. § 3582(c)(1), he is not entitled to a sentence reduction.

### III. Section 3553(a) Factors & Risk of Danger to the Community

Even assuming, *arguendo*, that Iwai exhausted administrative remedies and established an extraordinary and compelling reason justifying a sentence reduction, the Court must still consider any reduction in light of the sentencing factors set forth in 18 U.S.C. § 3553(a) and determine Iwai is "not a danger to the safety of

---

[5] *Legal Resource Guide to the Federal Bureau of Prisons*, BOP at 26 (2014), https://www.bop.gov/resources/pdfs/legal_guide.pdf ("FMC Rochester serves as a major medical and mental health referral center for male inmates. Most specialty and sub-specialty consultations are available through the Mayo Clinic, and in other local facilities.").
[6] *COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/(last visited Nov. 2, 2020).
[7] This is further evidenced by the facility's apparent ability to detect an infection early, given how frequently Defendant is being tested. *See* Dkt. No. 210-1 at 1–8 (Iwai had three negative tests in October 2020 alone).

any other person or the community, as provided under [18 U.S.C. §] 3142(g)." *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.

The only change since the Court's assessment of the Section 3553(a) factors when it denied Iwai's first compassionate release motion is that he has served a few more months of his sentence.  This change alone is immaterial to the Court's Section 3553(a) analysis, particularly considering the length of Iwai's total and remaining sentence (projected release date: January 22, 2030).[8]  For the same reasons articulated at Dkt. No. 200 at 5–7 then, the Court finds the Section 3553(a) factors counsel against release and that Defendant's 196-month sentence of imprisonment is, as it was at sentencing, "sufficient, but not greater than necessary" to meet the purposes of sentencing.

---

[8] *Find and Inmate*, BOP, https://www.bop.gov/inmateloc/ (last visited Nov. 3, 2020).

## **CONCLUSION**

For the reasons set forth herein, Iwai's motion for compassionate release, Dkt. No. 208, is DENIED.

IT IS SO ORDERED.

Dated: November 3, 2020 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*United States of America v. Bryant Iwai*, Criminal No. 15-00723-DKW,
**ORDER DENYING DEFENDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE**