UNITED STATES DISTRICT COURT

DISTRICT OF HAWAIʻI

| | |
|---|---|
| BRYANT KAZUYOSHI IWAI,<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | CR. NO. 15-00723 DKW<br>CV. NO. 22-00370-DKW-RT<br><br>**ORDER (1) DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE; AND (2) DENYING CERTIFICATE OF APPEALABILITY** |

Petitioner Bryant Iwai moves pursuant to 28 U.S.C. § 2255 to vacate his sentence for conspiring to distribute 50 grams or more of methamphetamine and possessing a firearm in furtherance of a drug trafficking crime, arguing that all five of the attorneys who represented him during his criminal case provided ineffective assistance of counsel.  Iwai, however, fails to show that his attorneys' performance was deficient in any of the manners he identifies.  Further, even if deficient, Iwai has failed to show any prejudice from his attorneys' alleged conduct.  Therefore, as more fully discussed below, the motion to vacate, Dkt. No. 239, is DENIED.  In addition, because reasonable jurists would not debate the denial of the motion to vacate, a certificate of appealability is also DENIED.

## BACKGROUND

### I.   Charges

On August 6, 2015, the government filed a criminal complaint against Iwai, alleging that, on August 5, 2015, he possessed with the intent to distribute 500 grams or more of methamphetamine.  Dkt. No. 1.  At that time, Iwai was also appointed counsel, Salina Kanai Althof, from the Federal Public Defenders Office.  Dkt. No. 3.  On August 25, 2015, Kanai moved to withdraw as Iwai's attorney, with that motion being subsequently granted.  Dkt. Nos. 13, 16.  As a result, on August 31, 2015, Stuart Fujioka, a lawyer from the Criminal Justice Act (CJA) panel was appointed to represent Iwai.  Dkt. No. 17.

On September 17, 2015, a grand jury returned an Indictment against Iwai, charging him with: (1) conspiring to distribute and possessing with the intent to distribute 50 grams or more of methamphetamine (Count 1); (2) possessing with the intent to distribute 50 grams or more of methamphetamine (Count 2); (3) possessing with the intent to distribute 50 grams or more of methamphetamine (Count 3); and (4) possessing a firearm in furtherance of a drug trafficking crime (Count 4), in violation of 18 U.S.C. Section 924(c)(1)(A) (Section 924(c)).  A Superseding Indictment was returned on June 29, 2016, containing the same charges.  Dkt. No. 106.  Iwai initially pled not guilty to those charges.  Dkt. No. 115.

## II.   <u>Motion to Suppress and Competency Evaluation</u>

On October 13, 2015, Iwai filed a motion to suppress evidence and

statements following an allegedly unlawful entry into his apartment on August 5,

2015.  Dkt. No. 24.  After the government filed an opposition brief, the Court held

a two-day evidentiary hearing on the motion to suppress with testimony from eight

government witnesses.  Dkt. Nos. 28, 38-39.  After the government rested, and

before Iwai decided whether to present evidence on his behalf, the Court ordered

that Iwai undergo a mental competency evaluation.  Dkt. No. 41.  After completion

of said evaluation, which resulted in the Court finding that Iwai was competent to

proceed in this case, the Court continued with Iwai's motion to suppress.  At a

hearing on April 12, 2016, Iwai chose not to testify in support of that motion.  Dkt.

No. 72.  At the same hearing, the Court denied the motion to suppress.  *Id.*  In a

subsequent written order, the Court explained, among other things, that (1) law

enforcement officers lawfully entered Iwai's apartment; (2) the officers lawfully

seized various items, including a gun and drugs; (3) Iwai waived his right to

counsel by initiating conversation with certain officers; (4) Iwai signed a waiver of

rights form after being transported to a task force office; and (5) Iwai confessed

voluntarily.  Dkt. No. 79.

## III.   <u>Guilty Plea</u>

On June 14, 2016, the Court held a hearing on both Fujioka's motion to

3

withdraw as counsel and Iwai's motion to withdraw his not guilty plea and plead anew. Dkt. No. 97. The Court denied the former, finding the motion to be untimely. As for the latter, Iwai declined to proceed with the same, as he indicated a desire to consult with a different attorney about a proposed plea agreement. *Id*. At a hearing on June 27, 2016, Iwai indicated that he wished to retain the services of Attorney Lynn Panagakos as counsel. Dkt. No. 112. As a result, on June 29, 2016, the Court permitted Iwai to replace Fujioka with Panagakos as his counsel. Dkt. No. 113.

On August 30, 2016, the Court held a further hearing on Iwai's motion to withdraw his not guilty plea and plead anew. Dkt. No. 120. At this hearing, Iwai confirmed that he had discussed this case with Panagakos, he had understood that conversation, and he was happy with the representation that he had received in this case. 8/30/16 Tr. of Hrg. at 4:2-14, Dkt. No. 170. Iwai further confirmed that he had reviewed his plea agreement with Panagakos, he understood the same, and no one had made any other promises or assurances to induce him to plead guilty. *Id*. at 6:4-17. Iwai further confirmed that he was agreeing to plead guilty to Counts 1 and 4, and that he understood the mandatory minimum sentence for Count 1 was 10 years imprisonment, the mandatory minimum sentence for Count 4 was 5 years imprisonment, and the sentence for Count 4 must be served consecutively to the sentence for Count 1. *Id*. at 15:1-17:5. Iwai also confirmed that he bought

4

methamphetamine from a contact in Las Vegas, Nevada, which he had shipped to his apartment in Hawaiʻi, agreed that he possessed a firearm in furtherance of a drug trafficking crime, and agreed that approximately 8,500 grams of methamphetamine was found either in his apartment or in a parcel shipped to his apartment. *Id*. at 23:19-27:13. Iwai further confirmed that he was giving up his right to trial on these charges. *Id*. at 20:18-22:1. Iwai subsequently pled guilty to Counts 1 and 4. *Id*. at 27:20-28:1.

In the written plea agreement between Iwai and the government, among other things, Iwai agreed that his plea was voluntary and not the result of force or threats. Dkt. No. 123 at 4, 19. Iwai further agreed that he faced a mandatory minimum sentence of 10 years imprisonment for Count 1 and a mandatory minimum sentence of 5 years imprisonment for Count 4, which was to be served consecutively to any sentence for Count 1. *Id*. at 5. Iwai further agreed that he bought "multi-pound" quantities of methamphetamine from a source in Las Vegas, some of which was distributed in Hawaiʻi, and possessed a firearm in furtherance of his drug trafficking activity. *Id*. at 9. Iwai further agreed that he was responsible for at least 8,610.8 grams of pure methamphetamine. *Id*. at 13. Iwai additionally agreed to waive his right to appeal or collaterally attack his conviction or sentence, except to raise a claim of ineffective assistance of counsel, challenge a

sentence greater than specified in the guideline range determined by the Court, or challenge the denial of his motion to suppress.  *Id*. at 15-16.

On September 7, 2016, Panagakos moved to withdraw as counsel for Iwai, and, on September 28, 2016, the Court granted said motion.  Dkt. Nos. 124, 128. On September 30, 2016, Attorney Richard Gronna was appointed to represent Iwai from the CJA panel.  Dkt. No. 129.  However, on December 7, 2016, Gronna withdrew as counsel because Iwai had privately retained counsel, Attorney Myles Breiner.  Dkt. No. 137.

## IV.  **Sentencing**

On December 13, 2017, the U.S. Probation Office filed a revised Presentence Investigation Report (PSR).  Dkt. No. 155.  Therein, Iwai was held responsible for the equivalent of 178,414.48 grams of marijuana,[1] resulting in a base offense level of 38.  *Id*. at ¶¶ 38-39.  After accounting for Iwai's acceptance of responsibility under Section 3E1.1 of the sentencing guidelines, Iwai's total offense level was 35.  *Id*. at ¶¶ 46-48.  With a criminal history category of I, this meant that Iwai's guideline imprisonment range for Count 1 was 168-210 months imprisonment.  *Id*. at ¶¶ 53, 95.  Iwai was also subject to a 60-month mandatory

---

[1]Because Iwai's offenses involved different types of drugs–specifically, pure and generic methamphetamine–it was necessary, under the U.S. Sentencing Guidelines, to convert the different types of drugs into a marijuana equivalency.  *See* Dkt. No. 155 at ¶ 38.

minimum sentence for Count 4 to run consecutive to the sentence for Count 1.  *Id.*
at ¶¶ 94-95.

Prior to sentencing, the government filed a motion for downward departure,
pursuant to Section 5K1.1 of the sentencing guidelines.  Dkt. No. 153.  The
government did so due to substantial assistance Iwai had provided with respect to
Randolph Cornelio−his source of drugs in Las Vegas.  Dkt. No. 153-1 at 1-3.
Because of this, the government sought a 2-level downward departure in Iwai's
total offense level, from 35 to 33, which would result in a revised guideline range
of 135-168 months imprisonment for Count 1.  *Id.* at 4.

On December 22, 2017, in a supplemental sentencing statement, Iwai
asserted that he did not use a firearm in furtherance of his drug crime.  Dkt.  No.
156 at 2.  He contended, instead, that the firearm found in his apartment had been
provided to him by Byron Ebesuia as "collateral" so Ebesuia could obtain drugs
from Iwai.  *Id.*  On January 3, 2018, in a sentencing memorandum, Iwai argued for
a total sentence of 120 months imprisonment: 60 months for Count 1 and 60
months for Count 4.  Dkt. No. 157 at 3.  Iwai argued that such a sentence was
warranted due to his substantial cooperation, his lack of a criminal history, and the
fact that he did not use the firearm found in his apartment.  *Id.* at 3-8.

On January 9, 2018, the Court held a sentencing hearing.  Dkt. No. 158.
Initially, the Court obtained clarity on Iwai's December 22, 2017 supplemental

sentencing statement and his assertion that he did not use a firearm in furtherance of his drug crime. Iwai, through counsel, clarified that he did not seek to withdraw his guilty plea as to Count 4, and he was merely making a "factual statement" that the firearm was "collateral" for a drug transaction. 1/9/18 Tr. of Sent. Hrg. at 4:1-8; 5:4-23, Dkt. No. 166. Because Iwai was not seeking to withdraw his plea to Count 4, the Court proceeded to sentencing. *Id.*

In fashioning a sentence, the Court, first, granted the government's motion for downward departure due to the cooperation Iwai provided concerning the source of his drug supply. *Id.* at 15:14-16:5. In terms of the extent of the downward departure, though, the Court disagreed with the separate recommendations of both the government and Iwai. *Id.* at 16:6-18:5. Instead, the Court found that, in light of the cooperation that had occurred, a three-level reduction of Iwai's total offense level was appropriate. *Id.* at 18:6-12. This meant that Iwai's total offense level was 32, resulting in a guideline imprisonment range of 121 to 151 months for Count 1. *Id.* at 18:13-22. In reaching a specific sentence, the Court also considered the 18 U.S.C. Section 3553(a) factors, and, after weighing both mitigating and aggravating circumstances, the Court determined that a mid-guideline sentence of 136 months imprisonment was appropriate for Count 1. *Id.* at 18:23-24:24. In particular, the Court found that the amount of methamphetamine involved in this case—at least 8,718 grams—"overwhelm[ed]"

any mitigating factors.  *Id*. at 19:13-21, 24:12-21.  The Court further sentenced

Iwai to 60 months imprisonment on Count 4, which was to run consecutively with

Count 1, resulting in a total sentence of 196 months.  *Id*. at 24:24-25:1.

On January 10, 2018, Iwai's Judgment of Conviction was entered.  Dkt. No.

159.

## V.   <u>Appeal</u>

On January 12, 2018, Iwai appealed his convictions and sentence.  Dkt. No.

161.  In doing so, Iwai principally challenged the denial of his motion to suppress.

On July 23, 2019, the Ninth Circuit Court of Appeals affirmed, concluding, *inter*

*alia*, that the record supported a finding that law enforcement's warrantless entry

into Iwai's apartment was justified by exigency.  Dkt. No. 186 at 3-13.

On January 13, 2021, the U.S. Supreme Court denied Iwai's petition for writ

of certiorari, Dkt. No. 217, and his Judgment of Conviction, thus, became final.

## VI.   <u>Rule 35 Motion</u>

While the appeal of his Judgment of Conviction was pending, on April 19,

2019, the government filed a motion, pursuant to Federal Rule of Criminal

Procedure 35(b), for a reduction in Iwai's sentence due to substantial assistance

("Rule 35 Motion").  Dkt. No. 173.  The government argued that, at least in part

because Iwai was willing to testify at the trial of Cornelio, Cornelio chose to plead

guilty to a drug offense and received a sentence of 135 months imprisonment.  *Id*.

at 3-7.  The government, therefore, asked for an 18-month reduction in Iwai's sentence.  *Id*. 8-9.  The government also explained that the Rule 35 Motion was filed more than a year after Iwai's sentencing due to a combination of factors that resulted in the motion being "lost in the shuffle."  *Id*. at 9-10.  Iwai filed a response to the Rule 35 Motion, requesting a 36-month reduction in his sentence.  Dkt. No. 175.

On May 23, 2019, the Court held a hearing on the Rule 35 Motion, Dkt. No. 178, and denied the motion as untimely.  5/23/19 Tr. of Hrg. at 3:12-8:6, Dkt. No. 180.  Specifically, the Court explained that a Rule 35 motion must be filed within one year of sentencing, except in three circumstances.  *Id*. at 3:17-22.  Although the government relied on one of those exceptions, the Court explained that that exception "clearly" did not apply because all of the information Iwai provided was "useful" to the government within one year of sentencing.  *Id*. at 3:17-25, 5:12-8:3; *see also* Fed.R.Crim.P. 35(b)(2)(B) (providing that a motion may be filed more than one year after sentencing if the "information provided by the defendant to the government within one year of sentencing . . . [does] not become useful to the government until more than one year after sentencing[.]").  Government counsel also argued that an "interest of justice" analysis should apply to the timeliness of the Rule 35 Motion because there was "no excuse" for the government's failure to file the motion earlier and Iwai's counsel−still Breiner at that point−had contacted

the government on "at least two occasions" to inquire about the status of a motion. 5/23/19 Hrg. Tr. at 4:1-23.  The Court rejected this argument as well because case law indicated that the time limits in Rule 35 were jurisdictional and, thus, not subject to an "interest of justice" analysis.  *Id.* at 7:4-8:3.  Finally, the Court noted that, even if the Rule 35 Motion had been timely filed, it likely would not have been granted because the information Iwai provided to the government had already been considered at sentencing when the Court departed downwards by three offense levels for Iwai's 5K1 conduct.  *Id.* at 8:6-9:8, 13:17-14:3, 16:1-10.

On June 3, 2019, Iwai appealed the denial of the Rule 35 Motion.  Dkt. No. 181.  On July 13, 2020, the Ninth Circuit dismissed this appeal for lack of appellate jurisdiction because Iwai had failed to show the denial of the Rule 35 Motion constituted a "violation of law" or the government's failure to file a timely Rule 35 motion was based on an unconstitutional motive.  Dkt. No. 201.

## VII.  **This Section 2255 Proceeding**

After various continuances granted by the Court, Dkt. Nos. 225, 229, on August 8, 2022, Iwai, proceeding without counsel, mailed to the Court a copy of the instant Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion").  Dkt. No. 239.  Therein, Iwai argues that, in various ways set forth in more detail below, each of the five attorneys who represented him in this criminal case and subsequent appeal rendered ineffective

assistance of counsel pursuant to *Strickland v. Washington,* 466 U.S. 668 (1984).

Iwai also argues that Count 4, referred to by Iwai as the "firearm" or "gun" charge,

violated his constitutional rights, the Court erred in denying the Rule 35 Motion,

and his 196-month sentence constitutes "cruel and unusual punishment" in

violation of the Eighth Amendment.

On November 14, 2022, the government filed an opposition to the Section

2255 Motion.  Dkt. No. 245.  On March 14, 2023, Iwai placed in the prison

mailing system his reply in support of the Section 2255 Motion.  Dkt. No. 252.

With briefing complete, this Order now follows.

## STANDARD OF REVIEW

Under Section 2255 of Title 28 of the United States Code (Section 2255),

"[a] prisoner in custody under sentence of a court established by Act of

Congress…may move the court which imposed the sentence to vacate, set aside, or

correct the sentence."  28 U.S.C. § 2255(a).  The statute authorizes the sentencing

court to grant relief if it concludes "that the sentence was imposed in violation of

the Constitution or laws of the United States, or that the court was without

jurisdiction to impose such sentence, or that the sentence was in excess of the

maximum authorized by law, or is otherwise subject to collateral attack[.]"  *Id.*

## DISCUSSION

As an initial matter, in the Section 2255 Motion, although certain of Iwai's claims are numbered, many, in particular almost all of the claims of ineffective assistance of counsel, are unnumbered. The unnumbered claims coalesce around various discrete subjects, such as Count 4 or the "firearm" charge, a polygraph examination, and plea negotiations, among others. As a result, in liberally construing Iwai's claims, the Court addresses them as follows: claims concerning (1) Count 4 or the "firearm" charge; (2) the polygraph examination; (3) plea negotiations; and (4) all other issues.

In addition, because many of Iwai's claims are premised on the alleged ineffective assistance of counsel, the Court begins with laying the legal framework for such claims. To prevail on an ineffective assistance of counsel claim, a petitioner must establish two distinct elements. First, he must show that counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688. Second, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In other words, a petitioner must show both that counsel's performance was deficient *and* that the deficiency was prejudicial. *Id*. at 692.

Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."

13

*Id*. at 690.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Id*. at 690-691.

Conclusory allegations of ineffective assistance of counsel made with no factual or legal explanation fall well short of stating a cognizable claim for ineffective assistance of counsel.  *See Blackledge v. Allison,* 431 U.S. 63, 74 (1977) ("[P]resentation of conclusory allegations unsupported by specifics is subject to summary dismissal.").

## 1.    <u>Count 4 or the "Firearm" Charge</u>

Iwai argues that Fujioka, Panagakos, and Breiner all rendered ineffective assistance of counsel by failing to "contest" Count 4.  Dkt. Nos. 239 at 4, 239-1 at 8.[2]  In the Section 2255 Motion, however, Iwai does not disclose how his various counsel should have "contested" this charge.  In his reply, Iwai asserts that counsel, or at least Breiner, should have requested a separate trial on Count 4

---

[2]In citing the Section 2255 Motion and the accompanying memorandum in support, the Court cites the page numbers assigned by CM/ECF in the top right corner of the documents, *i.e.*, "Page 4 of 12."

because Iwai did not "use" the firearm in committing a drug trafficking crime. Dkt. No. 252 at 7.

Liberally construing Iwai's arguments in this regard, he, arguably, challenges his attorneys' failure to contest Count 4 in one (or both) of two ways. First, Iwai may be contending that he was not guilty of Count 4 because he did not *possess* a firearm in furtherance of a drug trafficking crime because the firearm at issue was given to Iwai as "collateral" by the buyer in a drug transaction and, presumably, therefore, Iwai intended to return the firearm to the buyer upon receipt of money for the drugs being purchased. *See* 3/10/17 Decl. of Byron Ebesuia at 1, Dkt. No. 252-1. Any such argument is plainly meritless. Obviously, even if Iwai was only temporarily holding the firearm as "collateral", he was still holding onto the firearm or, in other words, he was still *possessing* the firearm while Ebesuia attempted to obtain money for the drug transaction. This is why the firearm was found in *Iwai's* apartment, next to *Iwai's* drugs−because *Iwai* was in possession of the firearm.

Second, Iwai may be contending that he was not guilty of Count 4 because he did not *use* a firearm in relation to a drug trafficking offense because he, at most, possessed it. *See* Dkt. No. 252 at 7 (citing *Watson v. United States*, 552 U.S. 74 (2007)). The problem with this logic, however, is that, in Count 4, Iwai was not charged with *using* a firearm in relation to a drug trafficking crime. Rather, he was

15

charged with possessing a firearm *in furtherance* of a drug trafficking crime—a different part of Section 924(c) than the one upon which he relies. *See* First Superseding Indictment at 3, Dkt. No. 106 (charging Iwai, in Count 4, with possessing a firearm in furtherance of a drug trafficking crime); 18 U.S.C. § 924(c)(1)(A) (prohibiting, among other things, a person during and in relation to a drug trafficking crime who "uses or carries a firearm, *or* who, in furtherance of any such crime, possesses a firearm") (emphasis added); *Watson*, 552 U.S. at 83 (explaining that the decision did not concern Section 924(c)'s "in furtherance" prong). And, here, even under Iwai's version of events, where the firearm acted as collateral, he undoubtedly possessed the firearm in furtherance of his drug transaction with Ebesuia. In fact, the drug transaction could not have continued or been consummated if Iwai had not held onto the firearm provided to him by Ebesuia. That was the purpose of using the firearm as "collateral"—to ensure Ebesuia returned with money for the drugs he either had or hoped to purchase. Therefore, the firearm clearly helped *further* Iwai's drug trafficking activities.

In this light, none of Iwai's counsel rendered ineffective assistance of counsel under either *Strickland* prong in failing to "contest" Count 4 on the grounds Iwai may arguably be raising in his briefing.[3]

---

[3]The Court further notes that, with respect to Fujioka, he did in fact "contest" the firearm charge by filing a motion to suppress. *See* Dkt. No. 24 (moving to suppress, among other things, the subject firearm). In his reply, Iwai also contends that Fujioka should have appealed the denial of

2.    **Polygraph Examination**

Iwai argues that Fujioka, Panagakos, and Gronna rendered ineffective assistance of counsel by failing to "set up" an appointment for him to undergo a polygraph examination.  Dkt. No. 239-1 at 8-11.  Iwai further argues that the results of the polygraph examination would have shown that government witnesses lied under oath during the hearing on his motion to suppress and that he was coerced into signing a confession without the presence of counsel.  *Id*. at 9.  Iwai also contends that the polygraph could have been used to "negotiate a better plea deal[,]" such as by running the sentence on Count 4 concurrent, as opposed to consecutive, to Count 1.  *Id*. at 9-10.

The Court disagrees that Iwai's counsel rendered ineffective assistance in these regards.  As an initial matter, given that the government witnesses were not being polygraphed, the polygraph examination of Iwai would not have shown that the *witnesses* lied under oath.  Rather, at best, it may have shown that *Iwai* believed a different version of events than the events relayed by the government witnesses in their testimony.  Next, Iwai provides no explanation, other than speculation, for why his polygraph-attested version of events would have led to a

---

his motion to suppress.  Dkt. No. 252 at 4.  However, by the time of his appeal in this case, Iwai had replaced Fujioka as counsel.  Moreover, Fujioka negotiated a plea agreement that *enabled* Iwai to appeal the denial of the motion to suppress–something which Iwai did after entry of the Judgment of Conviction, to no avail.  Therefore, these arguments are meritless.

"better" plea agreement and/or sentence in this case.  Moreover, Iwai could not have received a better plea agreement in the form of the sentence for Count 4 running *concurrent* with the one for Count 1 because a sentence under Section 924(c) is statutorily *required* to run *consecutive* to the sentence for the underlying drug crime.  *See* 18 U.S.C. § 924(c)(1)(A) (providing that the punishment for a Section 924(c) offense must be "in addition" to the punishment for the related drug trafficking crime).  Finally, the physical evidence in this case is clear that Iwai was guilty of the offenses to which he pled guilty: trafficking enormous amounts of drugs and possession of a firearm.  Iwai taking a polygraph examination on tangential issues, such as his immaterial confession, would not have changed the clear fact of his guilt and/or the sentence he received.

As a result, none of Iwai's counsel rendered ineffective assistance of counsel under either *Strickland* prong by failing to "set up" a polygraph examination.

### 3.   <u>Plea Negotiations</u>

Iwai argues that, in various ways, Kanai and Panagakos rendered ineffective assistance in negotiating a plea agreement for him.  Dkt. No. 239-1 at 6-11.  With respect to Kanai, Iwai asserts that she failed to inform him about a purported plea offer from the government that would have seen Iwai sentenced to 10 years imprisonment, with the sentence for Count 4 to run concurrent with the one for Count 1.  As discussed above, however, by law, a sentence under Section 924(c),

like the one for Count 4, must run *consecutive* to any sentence for the underlying drug conviction.  Therefore, even if the government had made the incredible offer Iwai contends, at the very least, he suffered no prejudice in Kanai failing to inform him of the same because this Court would not have given him an *illegal* sentence.[4]

With respect to Panagakos, Iwai argues that she failed to negotiate a "better" plea deal than the one negotiated previously by Fujioka.  Dkt. No. 239-1 at 8-10. In his reply, Iwai further explains that one of the reasons he hired Panagakos was to negotiate a plea deal containing "a set number of years to be served" in prison, rather than a deal based upon the U.S. sentencing guidelines, which Iwai found "unacceptable…."  Dkt. No. 252 at 5.  The foregoing does not demonstrate ineffective assistance.  Primarily, Panagakos was not deficient in failing to obtain a plea deal that was never offered.  There is simply no evidence that such a binding sentencing recommendation was ever offered by the government.  There is similarly no explanation for why this Court would have accepted such a binding sentence.  Therefore, there is also no prejudice.

Iwai also argues that, prior to agreeing to plead guilty, Panagakos told him that, if he refused the government's plea offer, he faced "35 years to life" in prison,

_____

[4]With respect to Kanai, Iwai also argues that she was "fired" and rendered ineffective assistance by allegedly telling law enforcement that he would "cooperate", even though Kanai had not consulted Iwai on whether he would do so.  Dkt. No. 239-1 at 4-6.  Even if true, again, Iwai has failed to show any prejudice in this regard, given that he states that he "refused to talk" to the law enforcement officials at that time.  *See id*. at 5.

and, under this "duress", he signed the plea agreement.  Dkt. No. 239-1 at 10-11.

Iwai's plea colloquy, however, shows something very different.  Notably, during

the plea hearing, Iwai confirmed, among other things, that he was satisfied with the

representation he had received in his case, he had reviewed the plea agreement

with Panagakos, he understood the same, and no one had made any other promises

or assurances to induce him to plead guilty.  Iwai made similar representations in

the plea agreement itself.  Dkt. No. 123 at 4, 19 (Iwai agreeing that his plea was

voluntary and not the result of force or threats).  These statements "carry a strong

presumption of veracity in subsequent proceedings attacking the plea." *United

States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008).  And, here, Iwai has provided

the Court with no reason to think otherwise.[5]  Therefore, the Court rejects the

argument that Panagakos rendered ineffective assistance in this regard.  *See

Kingsbury v. United States*, 783 F. App'x 680, 683 (9th Cir. Aug. 12, 2019)

(rejecting a claim of ineffective assistance alleging counsel "pressured" the

defendant to plead guilty in light of the defendant's statements during the plea

hearing that he had not been threatened or coerced in entering the plea).

---

[5]This is particularly so where, as here, even if true, Panagakos was merely accurately informing Iwai that, if he did not plead guilty, he faced possible exposure to maximum prison sentences on both Count 1 and Count 4 of life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A) (imposing a maximum penalty of life imprisonment if convicted of an offense involving 50 grams or more of methamphetamine); 18 U.S.C. § 924(c)(1)(A)(i) (providing for a sentence of "not less than 5 years" running consecutive to any sentence imposed for a related drug offense).

4. __Other Arguments__

The Court now turns, in no particular order, to Iwai's remaining arguments. First, in the Section 2255 Motion, Iwai raises a series of claims concerning matters that are not properly raised in a habeas proceeding such as this one. Specifically, Iwai argues that (1) Count 4 violated his constitutional rights under the Second Amendment, (2) the Court erred in denying the Rule 35 Motion, and (3) his 196-month sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment. Dkt. No. 239 at 5–8. These claims all concern matters that could have been raised during Iwai's criminal proceeding. Only the denial of the Rule 35 Motion was. Because a Section 2255 motion is neither a substitute for an appeal nor a vehicle to pursue a second appeal, none of these claims are properly raised here. *See United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010); *Johnson v. United States*, 362 F.3d 636, 638 (9th Cir. 2004).

Even if they were, none of these assertions has merit. With respect to the first issue, Iwai provides no meaningful explanation for how Count 4 violates his constitutional rights. Among other things, he cites no law for the proposition that a person engaged in a drug trafficking crime has a constitutional right to a firearm. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111, 2122 (2022) (explaining that the Second Amendment protects "the right of an ordinary, *law-abiding* citizen" to possess or carry a handgun for self-defense) (emphasis added);

21

*United States v. Potter*, 630 F.3d 1260, 1261 (9th Cir. 2011) (rejecting the argument that Section 924(c) violates the Second Amendment because said Amendment only protects the "lawful" possession of a firearm).  Iwai is also simply wrong that he was not informed of the "ramifications" of pleading guilty to Count 4.  Notably, among other things, during the change of plea hearing, the Court specifically informed Iwai that, in pleading guilty to Count 4, he would be subject to a mandatory consecutive sentence.  He received the same information in his signed plea agreement as well.

With respect to the second issue, Iwai provides no explanation, at least not beyond the ones that were presented by counsel at the hearing on the Rule 35 Motion, of how the Court erred in denying the motion as untimely.  To the extent there is any doubt, the Court reaffirms the reasoning provided at said hearing—the Rule 35 Motion was denied because case law indicated that the time limits in Rule 35 were jurisdictional and, thus, the Court had no discretion to apply an "interest of justice" analysis.  Further, Iwai appealed the denial of the Rule 35 Motion, and the Ninth Circuit dismissed said appeal.[6]  There is, thus, no basis to challenge the denial of the Rule 35 Motion, whether directly or collaterally.

---

[6]In his reply, Iwai also asserts that Breiner was ineffective by failing to ensure the government filed a timely Rule 35 motion. Dkt. No. 252 at 7.  Iwai is wrong on this matter too, however, given that, at the hearing on the Rule 35 Motion, the lawyer for the government stated that Breiner had emailed twice to inquire about the status of the Rule 35 Motion.  Iwai also contends that the government engaged in "[p]rosecutorial misconduct" in failing to file a timely Rule 35

With respect to the third issue, Iwai's 196-month sentence is far from a cruel

and unusual punishment.  Instead, it constitutes the *bare minimum* sentence the

Court could impose on Count 4 combined with a *middle*-of-the-guidelines sentence

on Count 1, following a three-level *downward* departure awarded by the Court that

exceeded the government's recommendation.  *See United States v. Parker*, 241

F.3d 1114, 1117 (9th Cir. 2001) (explaining that, "[g]enerally, as long as the

sentence imposed on a defendant does not exceed statutory limits, this court will

not overturn it on Eighth Amendment grounds[,]" and rejecting a challenge to 300

months imprisonment imposed for violations of Section 924(c)).  Iwai's sentence

was more than reasonable (and far from cruel and unusual), given the large volume

of pure methamphetamine in which he transacted.  *See Graham v. Florida*, 560

U.S. 48, 60 (2010) (explaining that, in non-capital cases like this one, the Eighth

Amendment "forbids only extreme sentences that are grossly disproportionate to

the crime.").  Further, appellate counsel could not have rendered ineffective

assistance of counsel in failing to raise this issue on appeal, given that, in his plea

agreement, Iwai waived the right to challenge on appeal any sentence, unless it was

*greater* than that specified in the guideline range determined by the Court.  Here,

---

motion.  Dkt. No. 252 at 8.  A similar argument, however, was raised on appeal and rejected by
the Ninth Circuit.  *See* Dkt. No. 201 at 2.

as mentioned, Iwai received a *mid*-guideline sentence on Count 1 and the statutory minimum sentence on Count 4.

Finally, in his reply, Iwai argues that, during the hearing on his motion to suppress, two of the government's witnesses provided "contradict[ory]" testimony on whether he "verbally waive[d]" his right to counsel while being transported and, despite this, Fujioka "convinced" Iwai not to testify that he did not waive his right to counsel.  Dkt. No. 252 at 4.  Iwai argues that, as a result, the denial of his motion to suppress should have been appealed in light of the "contradicting testimonies regarding [Iwai] verbally waiving his Constitutional Right to have counsel present." *Id*.  As an initial matter, as noted above, Fujioka could not have rendered ineffective assistance in this regard because, by the time of his appeal, Iwai had long since replaced Fujioka as his counsel of choice.  Moreover, Fujioka negotiated a plea agreement that allowed Iwai to appeal the denial of his motion to suppress.  To the extent Iwai contends that his appellate counsel, Breiner, rendered ineffective assistance by failing to raise this issue on appeal, the Court disagrees. Among other things, even if Iwai did not verbally waive his right to counsel while being transported to a task force office, the evidence was clear at the suppression hearing that, once at the task force office, Iwai initialed and signed a *written* waiver of rights form, which included responding "yes" to whether he was willing to answer questions.  Dkt. No. 79 at 32.  In addition, the evidence was equally clear

24

that, while being transported, police officers did not ask Iwai any questions about this case.  *Id*. at 27.  The physical evidence in this case was also clear, rendering any statement by Iwai as unnecessary to his conviction on either count.  There was, therefore, no meaningful issue for counsel to appeal in this regard.

## 5.   Evidentiary Hearing

In neither the Section 2255 Motion nor his reply, does Iwai request an evidentiary hearing.  Nonetheless, pursuant to Section 2255(b), a court shall grant a prompt hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief…."  28 U.S.C. § 2255(b).

As the Court has detailed herein, the record conclusively shows that Iwai is not entitled to the relief he seeks in the Section 2255 Motion.  In short, counsel neither performed deficiently nor prejudiced Iwai.  Further, Iwai's claims that do not involve ineffective assistance of counsel are not cognizable in this proceeding and are, in any event, meritless.  The Court, thus, finds that an evidentiary hearing is not warranted.

## 6.   Certificate of Appealability

In denying the Section 2255 Motion, the Court must also address whether Iwai is entitled to a Certificate of Appealability ("COA").  *See* R. 11(a), Rules Governing Section 2255 Proceedings.  A COA may issue "only if the applicant has

made a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(2). This standard is met only when the applicant shows that "reasonable

jurists could debate whether . . . the petition should have been resolved in a

different manner or that the issues presented were adequate to deserve

encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 483–84

(2000) (internal quotation marks omitted). In light of the findings herein, the Court

concludes that reasonable jurists would not debate the resolution of the Section

2255 Motion. Accordingly, the Court DENIES Iwai the issuance of a COA.[7]

## **CONCLUSION**

For the foregoing reasons, the Court DENIES the Section 2255 Motion, Dkt.

No. 239. In addition, the Court DENIES a COA.

The Clerk is directed to enter Judgment in favor of Respondent, the United

States of America, and then close Case No. 22-cv-370 DKW-RT.

IT IS SO ORDERED.

Dated: April 20, 2023 at Honolulu, Hawai'i.



Derrick K. Watson
Chief United States District Judge

*Iwai v. United States*; CR. NO. 15-00723 DKW, CV. NO. 22-00370 DKW-RT; **ORDER (1)
DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR
CORRECT SENTENCE; AND (2) DENYING CERTIFICATE OF APPEALABILITY**

---

[7]In his reply, Iwai also requests the appointment of counsel. Dkt. No. 252 at 8. For the same
reasons as recently articulated by the assigned U.S. Magistrate Judge in denying a similar request
for counsel, *see* Dkt. No. 249, this latest request is also denied.